May it please the court, counsel. My name is Robert Kleppner and I am the attorney for Solomon Osiris, who is the petitioner in this habeas corpus matter. I know I belabor the obvious when I observe first that of course everyone on this panel is a trained lawyer, as are the people at counsel table, but I dare say the entire audience in this room are all trained lawyers, and as such, although we deal with human passions every day in court and out of court, we ourselves are trained to try to do the best we can not to engage in outbursts of undue emotion in the courtroom. Judges are likewise trained and jurors are likewise instructed, so it might be a long leap, but I ask this court's indulgence to try for just a moment to put itself in the shoes of my client when he found himself at trial, surrounded by hostile forces and with only an attorney to represent him at his trial. A man of limited means and education on trial for murder, his own son is co-defendant, and he's come since before jury selection to doubt the zeal and the confidence in this case of his own attorney. As the trial progresses, they're increasingly at odds. He has heard his attorney say on the record that he doubts his ability to represent his own client zealously, that he's never felt like this before in his career in terms of his representation of a client, and that their relationship is ruined. His own attorney has made these representations in open court to the judge. He has had continuing strong differences of opinion with this attorney, and as the trial is wending its way through, I believe some 13 witnesses out of 22 have testified, but there are some nine witnesses left to go. He's leaning in close to his attorney and trying to make a point. The jury is out of the courtroom. The jury is being brought in, and the attorney, for reasons that have never been made clear because there's never been an evidentiary hearing in this case, the attorney leans into his face and says, and I quote, shut the fuck up. This is his own attorney. As Mr. Osiris expressed to the trial court on more than one occasion, he was the person on trial. His life was at issue, and even though it was not a capital case, he found himself lost when even his own attorney was verbally assaulting him in court. He's an uncultured man. Counsel, the incident you're describing was not the first incident involving your client, was it? This outburst? When the attorney told your client to shut up. Something had occurred prior to that, hadn't it? There had been an outburst by the client before. It's unclear from the bare record how extreme that was, but there had been an argument between him and essentially the court as to whether he was receiving a fair trial. Your client had knocked all of the items off the counsel table onto the floor. He did. Your Honor, the only point I'm trying to make with this, perhaps a melodramatic recitation of the facts, is that my client is not a cultured person trained in the law, and he's not used to the decorous atmosphere of a courtroom, and he did feel, wrongly or rightly, that he was being railroaded, and he acted out, and ultimately he was given a sanction by the court. He lashed out at his own attorney. This is true, and it's deserving of a strong sanction, but the record is pretty clear on this point that he didn't punch his attorney. He slapped him. He claims he pushed him. It's a tough call. The trial judge ultimately said, we'll call it a hard slap. It's unclear exactly what happened, but no damage was done to the attorney. No criminal charges were pursued. Counsel, you would agree with me that this posed a real dilemma for the trial court because the judge is charged with ensuring the safety of everyone who's in the courtroom. Absolutely, Your Honor, and I don't dispute that at all. Beyond that, Illinois v. Allen gives the trial court a great deal of discretion in how to respond to situations like that, and there were, in fact, a universe of options open to the court that it might have considered, and under the Allen case, it appears to me, the way I read Allen on the cases after it, that the court was required to proceed in something of an incremental manner. But this record is different. In this case, well before there was any real outburst that the trial court might have been concerned about safety of courtroom personnel, the court had already begun to tell Mr. Osiris that he had limited options here, that he could either behave or that he could be his own attorney if he were to remove Mr. Groom, or he could simply be taken out for the rest of the trial and left out of the courtroom and not attend his own trial. The trial court's comments, especially at sentencing, where he said, I hope this word gets around, make it clear that his interest was twofold. Perhaps it was in preserving order, but it was also in making an example of Mr. Osiris so that if there was, in fact, some brewing rebellion among the local prisoners, that this would help convince them that defendants who acted out in court would be dealt with harshly. Wasn't there some context to that, that in a prior case, someone had an altercation with the attorney and the attorney was replaced? Wasn't that the context in which the judge was saying, I hope word of this gets around? It wasn't in a vacuum, was it? Well, it's unclear how many facts there really were. As I tried to point out in my reply brief, there were a number of times there were references to facts or the record. There were references to another case in which there had been someone who had stricken his attorney. There was no showing that there actually was a motion for mistrial in that case, that there was a mistrial granted. The judge brought this up on his own, and it's utterly unclear what kind of second or third or fourth hand hearsay he was relying on in using this as a post hoc justification for what he did as to Mr. Osiris. What is the violation of clearly established Supreme Court law in this case? What is the violation of clearly established Supreme Court law? As I conceded earlier, the trial court has a great deal of discretion in trying to preserve order in his court, and it seems to me those acts need to be incremental. The violation of the Supreme Court precedent is the case of Illinois v. Allen, which is a case in which the court approves the trial court's right to remove a defendant from the courtroom if he is obstreperous. That's the theory that you're relying on, Illinois v. Allen? Yes, Your Honor. Do you have a case that says it's a violation of a defendant's constitutional right if the measures taken are not incremental? Allen itself suggests that they need to be incremental, Your Honor, and facts of Allen support this, because in Allen the defendant was removed from the court for obstreperousness not once but two times, and yet he still was brought back to court afterwards and given an opportunity to promise to be good, and he was good, and the trial concluded in his presence. And the opinion is very clear that they are approving the judge's removal of the defendant from the courtroom because he was, in fact, given an opportunity to come back, and he did come back. What this judge did was he leapt ahead to the last step under Allen, which is after there is no question that a defendant who has been shown that the sanction can be removed from this trial will continue to act out. But he had been warned, right, in advance? There were a number of warnings over a very short period of time. If the court looks at the record, all those warnings occurred in, and I can't tell how many minutes elapsed, but they're within about ten pages of the time that the actual outburst occurred. And the fact that a judge can warn a defendant does not excuse him from giving a defendant a chance to come back and behave after he's tasted the lash of exclusion. I mean, there's no greater sanction the court could have imposed. This is not a sporting contest where he could have declared a forfeit because of the defendant's bad behavior. He couldn't have directed a verdict for the prosecution. The worst thing he could do to Mr. Osiris was to remove him from the courtroom and never give him a chance to come back, which is precisely what he did. Counsel, but trial counsel at that point, you know, was pretty, was frightened of his client, and it would have been extremely difficult to continue the trial with, you know, everyone kind of on edge in terms of when is he going to strike out next. I'm not sure that if he promised the judge that he would behave, that the judge was required to accept that in light of the violence that had occurred previously. I think that the judge was required to fashion some sort of remedy that would permit Mr. Osiris to attend his own trial. As I pointed out in my brief, there are a number of remedies the court might have considered but apparently did not seriously consider, and none of which were, none of which was the defendant consulted. I mean, there could have been a solution, for example. There could have been, there are stun devices that existed even back at the time of that trial. There could have been shackles. There are cases that have approved even putting armed guards at counsel table. And all of those are problematic, and we probably, all of those are problematic as well, and we probably would have been here with another, a different type of claim if any of those had been selected. That's possible, Your Honor, but that claim is not before the court. We can only deal with the facts that are before the court. Well, my point is, is the judge required to choose an alternative that also has constitutional implications? There could have been an inquiry on the record as to the defendant's preferences on the matter. The defendant, once he was removed from the courtroom, never came back until it was time to give him the verdict. It could have been brought forth to the defendant that he had rather harsh options before him, and they could have been explained to him, and he could have executed a waiver of some sort. What we have on this record instead is that the court, musing openly about what he might do, suggested that he might use shackles, and the defense attorney just as offhandedly suggested, well, I would have a strong objection to that, Your Honor. But Mr. Osiris was not even there. There's no indication that his opinion, and he is, after all, the defendant, no indication that his opinion was ever sought, nor was it delivered to the court as to whether discreet shackles, and there are ways to shackle a defendant that are not immediately visible to a jury. There are ways that he could have been physically restrained and still allowed to be present and still being held essentially incommunicado by being taken out of the courtroom and having the court rely upon an attorney who did not like his client anymore and who the record shows met with him only once after the time he was excluded from the court. So apparently, according to your argument, the judge has discretion to choose among a variety of alternative means of controlling the defendant. But you're saying in this case he abused his discretion because he went too far or he didn't explore less restrictive alternatives? Is that your argument? That certainly is similar to my argument, Your Honor. He did have a duty to explore less restrictive alternatives under the cases, the way I read them. But does any case say that? Pardon me? Does Illinois versus – does Allen v. Illinois say that? No, Allen v. Illinois does not say that. But there is a case – there are cases that I have cited in my brief for the proposition that a court, in determining how to best preserve order in the courtroom, does have a duty to consider less restrictive alternatives. And what I'm saying is not just – First court case. And I'm not saying that the court simply abused his discretion. I'm saying that he violated the Constitution when he removed Mr. Osiris from the courtroom without considering those less restrictive alternatives and then giving him a chance to return. Well, that's the question. Where do you draw the line? Where does discretion end and the constitutional violation take up? I'm sorry, Your Honor. I can't hear you. That's the problem with this case. Where does the discretion of the judge end and the constitutional duty pick up? Where is the point where the discretion has been constitutionally exceeded? Do I make myself clear? I believe that he exceeded his discretion under the Constitution when he indicated that he had an indication of an interest in excluding Mr. Osiris from his trial and he followed through with that and never gave Mr. Osiris a chance to come back. Federal Rule of Criminal Procedure 43, for example, was meant according to the advisory note – I'm not ignoring the court's question – meant according to the advisory note to track Allen. And it also says that after warning a defendant, you may remove them from the courtroom. But the 1974 advisory note makes it clear that it is meant to be consonant with Allen. Therefore, it must be, although there are no cases saying so, that a defendant has a right to return after being so excluded. Counsel, can you conceive of a circumstance where a defendant's conduct is so egregious that the court may permanently exclude the defendant from trial? Certainly. Had Mr. Osiris come back and engaged in further obstreperousness, I think the court would. I mean on the first incident. On the first instance. Do you envision that? I'm not sure that I can, Your Honor. I think that if his conduct was so bad at the level that I think the court is contemplating, I think that the court would have no choice but to call a mistrial and then at a new trial to engage in security measures that would guarantee it would not be. So your position is there is nothing a defendant can do that is so egregious that it warrants permanent exclusion from a trial on a first offense? Well, I think if the defendant engaged in such hypothetically egregious conduct as the court is describing, that it would necessarily inflame the passions of any jury that might witness it so that a fair trial could not be had after that point. I mean, I think at some point you get to a level of outrageousness that perhaps exclusion would be justified, but more to the point, that trial could not fairly go on. I don't know what those facts would be. I don't doubt that some member of the court has seen something like that in the past, but I can't think what they would be. Did the defendant in this case ever ask to be returned? Did he ever say, I'd like to be returned and I'll behave? Or anything like that happen? He sent that message to the court through his son and through his attorney on multiple occasions, but he was never asked himself by the – he was never brought back by the court and asked whether he would like to have that option. He sent that message to the court, but the court simply refused to have him come back to court under any circumstances. I would like to preserve the balance of my time for a moment. I will find the case I was referring to. All right. Thank you, Jennifer. May it please the Court and Counsel, I'm Janet Klapstein appearing on behalf of Respondent Appelli, Superintendent Thompson. I think it may be somewhat beneficial to narrow down some of these issues just to winnow out what has been procedurally defaulted and what has not. I agree with counsel that it appears to be the primary issue that was not procedurally defaulted is the issue of whether the trial court effectively abused its discretion under the discretion that was granted under Illinois v. Allen. But just to clarify, the procedural default issues that we haven't really discussed today because I didn't want to abandon those completely, the issue of whether the trial court should have granted a substitution of counsel either early on or after the slap, punch, whatever you want to call it, that's a defaulted issue that was in the state court appellate briefing but not in the petition for review. It was barred under Baldwin v. Reese. The issue, same thing, whether Mr. Groom should have himself withdrawn due to a conflict of interest, it was not litigated in the post-conviction petition. It's procedurally barred. And then some other smaller claims such as this, should he have investigated Mr. Witness' name, Larry Lenon, and a couple things like that. Well, what issue was preserved in your view? I think there are two issues that we can narrow down that this court can examine that are not defaulted issues. One is, as I discussed, whether the state court's rulings were an unreasonable application of Illinois v. Allen or contrary to Illinois v. Allen. That's the one issue. What rulings specifically? That would be the decision to exclude Mr. Osiris from trial after he, however you characterize it, assaulted his attorney. The second issue I believe that has been fully exhausted and litigated is whether trial counsel, Mr. Groom, acted ineffectively by not doing more to mitigate the exclusion, that is not checking in periodically, not checking on these tapes. And that was an issue that was litigated in a post-conviction court, and there the post-conviction trial court rejected the petitioner's claim on factual grounds. It found, in fact, that Groom had met with his client as directed by the court. That's borne out by the contemporaneous record where three or four different times after recess, the attorney brings back to the trial court's attention issues that his client wishes for him to bring to the attention of the court. The post-conviction trial court also rejected on factual grounds the claims, never had any access to the tapes. And, again, that is supported both by Mr. Groom's affidavit and by the contemporaneous record, which discusses the trial courts having direct conversations with jail staff about making sure you get those tapes to the accused and making sure he has, if they don't like this walkman with a cord that might hurt somebody, that they use a different taping device. So both of those were rejected on factual grounds in a collateral attack such as this. The petitioner would have the burden of proving by clear and convincing evidence that those factual claims were incorrectly decided by the state courts. So I think that where that really leaves us is this, is the core Illinois v. Allen claim. And there was one small aspect of the case that I did want to bring to the court's attention and brought to the attention of counsel this morning. I had completely forgotten that the direct appeal of State v. Osiris concerning the exclusion, there was actually a petition for Supreme Court cert. Cert was denied. That cert-denied site does not appear in either side's brief. But one cannot really construe much from that other than the claim was presented to the United States Supreme Court on the Illinois v. Allen violation. They elected not to accept cert on that issue. On the question of abuse of discretion, is that a little broader than the initial exclusion from the courtroom? Weren't there some requests by counsel to readmit him to the courtroom, and then the trial judge denied each of those requests? Would that be included also in the abuse of discretion analysis? I think that would also fall within the abuse of discretion, and I think I should provide some factual context that might explain our position. Because as noted previously, this slap was simply the culmination of several acts of misconduct by this defendant. There had been no complaints about counsel until the State managed to find this homeless witness through a material witness warrant procedure. And it's that point in time that this alleged, I want my attorney off the case, business started. And the trial court at that point in time didn't simply refuse to inquire. It made an inquiry about what is the nature of this conflict. Mr. Osiris said, I just don't like his lack of confidence. I agree he's confident. There was a discussion, and he elected to continue with Mr. Grim as his counsel. The next series of things that happened were the events where it was nearly the conclusion of the State's case were down to two detectives that he'd already heard actually in the suppression hearings concerning the throwdowns and things like that. And it's at that point in time that he flings over, you know, if it's an appropriate case, I mean no assertions by this, but he knocks over the microphone, throws the papers off the podium, knocks the microphone in a thermos of water, but throws this piece of paper that says I'm not guilty in front of the jury. And the trial court found those actions, and again later it articulated the findings after the slap incident. It found that it was a conscious objective by Mr. Osiris to engineer a mistrial. And it's a mistrial that would not only have benefited him but would have benefited his son because, as we saw later, the son also raised mistrial because of his father's misconduct, didn't want the jury to think, well, the apple doesn't fall very far from the tree. But the trial court at that point in time began the procedure mandated by Illinois v. Allen. It explained to Mr. Osiris, here are your options. You can either obey the dictates and appropriate conduct in court, or we can have you removed. And it went through that kind of explanation not once, not twice, not three times, not four times, but five times. But Illinois v. Allen has a second prong where the court says that once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts. Now, what about that prong in this case? Did he try to reclaim his right to come in? I think he asked to be returned, but I think there's a qualitative difference between a demand to be returned and a trial court finding you would still be incontumacious, you would still be obstreperous, you would still be problematic. Or did the trial court make a finding in response to the request to be returned? Yes, the trial court found that given the defendant's prior conduct, it could not be confident that he would not continue to be a threat to those persons physically present in the courtroom. The trial court also did consider shackling, but it was objected to by a defendant's counsel. It also considered an imposed contempt sanction, but this is a murder case in which the defendant would be facing life imprisonment, and contempt was not a realistic option. So it considered all those options, and to the extent it was obligated to walk through the potential remedies, it did give great and conscious thought to those options, not just once, but in a couple different occasions where defendant would have Mr. Broome come back to the court and say, my client would like to come back, but by the same token, my client still wants an attorney who's reverential and who's loyal, and he was still on his substantive tirade about the conduct of counsel, which as a trial judge I think would give one pause. But one aspect of Illinois v. Allen I did want to point out is the warnings occurred one day. I think it was the 29th at about the end of the afternoon session, and the judge did remove the offender, and it was the next morning that the offender came back, and the judge advised him it was his decision. But at that point in time, if there is implicit in Allen's, a defendant can ask to be returned and promised to be good, that wasn't happening the next day, because that very next day is when he's still calling the prosecutor, this wicked witch, she's bribed these witnesses, this is no attorney of mine, I want to write a fair trial. And with that kind of conduct, it may be an admirable thing to hope a defendant calms down and will not pose a threat to others, but with that kind of conduct, I don't think the trial court was affirmatively obligated in the exercise of its discretion to return a defendant who it had already found wanted to engineer a mistrial by his own misconduct. And I think that's where Petitioner and the State disagree in the application of Allen. But as the magistrate and district court judge found, it could not say that the state court's application of Allen was either contrary to or an unreasonable application of the fairly broad ground of authority that the United States Supreme Court had granted trial courts in an effort to ensure the trials would be completed without threat to Safeway, without interceding decorum, without granting to criminal defendants who want to engineer a mistrial the ability to bring about that mistrial by their own misdeeds. And to the extent that the issue is, well, perhaps Mr. Groom should have withdrawn after he was struck, the trial court in this case was quite concerned, as was the United States Supreme Court in Illinois v. Allen, that a defendant would not be given the authority to do just that, to engineer a mistrial to his advantage by his own misdeeds. And it must be recalled, this is a case where all the witnesses had, State and defense, had terrible problems with their witnesses. Both sides were seeking material witness warrants, and it was only after all the State's evidence was largely complete that the defendant engaged in this degree of misconduct. I would like to say also, the blue brief, the appellant's brief, gives kind of an overstatement as to the quantity of the remaining portion of the trial that Mr. Osiris actually missed participating in. It has this flavor of there are days and days of trial left, and I think if you look closely at the record, that's simply not the case. The defendant was excluded on the 29th. The court started the next morning about 10.30. There was quite some lengthy description to Mr. Osiris, to his son, to the cautionary instruction of the jury. And then the evidence proceeded, and what was left was the detective, one of the detectives who had done some witness interviews and a throwdown. The afternoon session was six minutes of another detective's testimony, after which case you have the defense case commencing, and there's two alibi witnesses called. There's a TV technician who confirms the date of a particular program. You have two witnesses of the co-defendant's alibis that really is entirely unrelated to the defense of petitioner's case. And that's about it. And if you total up all those recesses, and intermixed in those recesses are at least four occasions, three or four occasions, where Mr. Groom reports back things that his client has asked him to convey to the court, you end up with not quite adding up all the little parts, about three hours' worth of testimony over the course of two or three days that remain. I think it was two days left. And as we stated before, the trial court did go out of its way. It actually employed a remedy suggested in Justice Brannon's concurrence that, yes, a trial court has this discretion, but it should ameliorate this remedy that it's chosen within technological means. And it sent up tapes, even though that didn't occur in Allen v. Allen. What Mr. Osiris missed was tantamount to that which was missed in Allen. Mr. Allen himself missed the entirety of the state's case from end of jury selection to the point at which the state rested. So this defendant, in terms of quality of what he missed, didn't miss a whole much, a whole amount. He had access to the tapes as found by the post-conviction court. He never told anybody he was not having access to those tapes. That was rejected on credibility ground. But long story made short, the trial court was in a very, very difficult position. It had an obligation to enforce fair trial rights for all accused. It had an obligation to protect the safety of those present in the courtroom. It had an obligation not to reward the offender for his own misdeeds and not to allow him to engineer a mistrial. And of the discretionary remedies it selected, it did all that it could to ameliorate its choice of remedies and still include that offender within the trial. If there are no further questions. Thank you. Thank you. Rebuttal. It's not rebuttal of the cases I was referring to or referred to on page 34 of my thoughts opening brief. None of them explicitly stands for a situation like this situation, in that they don't deal with a defendant being removed from a courtroom and a court's duty to consider less alternatives, less restrictive alternatives. But they all stand for the larger question of whether a court, in ensuring taking order, ensuring the order to be preserved in its courtroom, must consider the alternatives that are least restrictive of the defendant's constitutional rights. Are those Supreme Court cases? They're all Ninth Circuit cases, Your Honor. Gonzales v. Plealer had to do with fiscal restraints. Morgan v. Bunnell, the same. Spain v. Russian, the same. And Riggins v. Nevada is a Supreme Court case, but it deals with the court trying to preserve order in the court by administering anti-psychotic medication to a defendant. And the Supreme Court said that before you take an extreme step, and I would submit that removing a defendant from this trial permanently is an extreme step, that one must consider less restrictive alternatives that will also ensure that order be preserved. A couple of points I'd like to respond to that the State made. I believe I heard her say that the trial court found that the defendant was trying to engineer a mistrial. That is not really what the record reveals. What most of the court said was that he had reason to believe that the defendants may have planned his outburst in the courtroom, and he based that on what I referred to earlier as hearsay about what had gone on in some other case in the county at some recent point in time. Do you agree with opposing counsel regarding the claims that have been preserved? Do I agree with her? Yes. No. I believe that the claim of ineffective assistance of counsel is preserved, but I disagree with her attempt to straighten it, to narrow it into being only certain kinds of things. For example, much is made of the question whether at some point in time Mr. Groom was ineffective because he failed to withdraw from representation. That's really a non-issue. I mean, he did everything he could do except flee the courtroom at top speed to withdraw from representation. Was that claim preserved? Which claim? Ineffective assistance. The claim on the denial of his motion to withdraw from representation. I believe it was, but I can't cite chapter and verse in the court. I know it's addressed in my brief. The other thing I heard counsel state, I believe, was that the suggestion that bringing Mr. Osiris back to court the next morning after the major blowup that led ultimately to his exclusion somehow could be seen to satisfy Allen's requirement that a defendant be returned and given a chance to behave. But it's very clear, if you look at the transcript of that hearing, that the first thing the court says is, I slept on it. I've decided to exclude it from the court. And anything that transpires after that is in the face of that statement. The only other thing I want to mention is that counsel suggests in her brief in here that there was lots of communication, meaningful communication, between Mr. Osiris and his attorney after he was excluded from the court. If one looks at the motions made by Mr. Groom in Mr. Osiris' absence, virtually all of them had to do with halting the proceedings or returning him to the court or securing a mistrial. There is almost nothing there that has to do with the substantive conduct of the trial as it had been going on since his exclusion, which is what needs to be shown on the record for this court to find that there was not a denial of effective assistance of counsel. The few substantive points that are raised along those lines, it's unclear when those conversations took place. For example, in their brief, the State suggested that he had agreed to a stipulation, but if you read the record, that stipulation was agreed to by Mr. Osiris at the beginning of the trial, not necessarily during some courtroom jailhouse consultation. I see my time is up. If there are no other questions. Thank you. Thank you to both counsel. Thank you. The case just argued is submitted for decision by the court. The final case on calendar for argument is United States v. Stacy. Counsel, have you all agreed on how you're going to allocate your time? Yes, we have, Your Honor. Good morning. I'm Michael Levine.
judges: T.G. Nelson, Rawlinson, Pollak